## Case No. 8,609.

### The LUTEKEN.

### POST v. HUGHES.

[6 Ben. 565.] [1]

District Court, E. D. New York. June, 1873.

POSSESSION—CHARTER—EXCEPTED PERILS—RIGHT
OF MASTER TO SELL CARGO—BREAKING UP VOY-
AGE—INJURY TO VESSEL AND CARGO.

1. A bark was chartered for a voyage from New York to Montevideo, by a charter which contained the clause, "dangers of the seas, fire and navigation mutually excepted." The charterer put on board a full cargo of lumber. On the day the loading was completed. a fire broke out on board, which made it necessary to fill the vessel with water. Both vessel and cargo were damaged, and the cargo had to be unloaded, but could have been carried forward in a damaged condition. In its damaged condition, it was worth in New York $4.947 26, and the freight due on performance of the voyage under the charter, was $5,105 29. The charterer offered to supply a new cargo. to be carried under the charter in lieu of the damaged one, but the master refused to give up the damaged cargo without payment of full freight. No offer was made to carry the cargo forward in any other ship. The ship was repaired at a cost exceeding her value when repaired; and the master, being without funds to pay for the repairs, which were liens on the vessel, advertised for a loan of $17,000, which was more than the value of the bark and cargo, upon the security of the vessel, her freight and cargo. Thereupon the charterer demanded his lumber, and, on a refusal to surrender it, except on payment of full freight, filed a libel against the cargo for possession; and, by means of the process issued thereon, took the cargo from the possession of the master, and it was afterwards delivered by the marshal to the charterer, on a stipulation for value taken in court, to return the cargo or pay whatever the court should decree the ship to be entitled to receive by reason of the removal of the cargo. The master also filed a libel against the charterer to recover the full freight and the average charges: Held, that the charterer was entitled to have substituted a sound cargo in place of the damaged cargo; and that the refusal of the master to accept the substituted cargo thus tendered. entitled the charterer to treat the charter as broken by the ship, and to demand the damaged cargo without payment of freight.

2. The act of the master in advertising for such a loan on the credit of the cargo. as well as of the ship and freight, was without authority. and authorized the charterer to treat the voyage as broken up by the fault of the ship; and it entitled him to demand the cargo without payment of freight.

3. The charterer, therefore, was entitled to a decree declaring him entitled to the possession of the lumber with costs; and the master's libel must be dismissed, with costs.

[These were suits in admiralty on the cargo of the bark Luteken and by Lucas E. Post against William H. J. Hughes.]

Scudder & Carter, for charterer.

Goodrich & Wheeler, for master.

BENEDICT, District Judge. On the 3d day of April, the libellant in the first of the above-named actions. at the port of New York, chartered the German bark Luteken for a voyage from New York to Montevideo, and agreed to provide her with a full cargo of lawful merchandise for the aforesaid voyage, to be transported to Montevideo at rates agreed on. The charter party contained the clause "dangers of the seas, fires and navigation mutually excepted." In accordance with this charter party, the charterer provided a full cargo of lumber, the lading of which was completed on the 17th day of April, 1873. On the same day a fire broke out in the bark, to extinguish which it was necessary to fill the vessel with water, and by reason of the fire, the vessel was so damaged as to require extensive repairs before being able to perform the voyage.

In order to repair the vessel, it was necessary to unload the cargo, and it was unladen by the master of the vessel. Some of the cargo was also greatly injured by the fire, but the largest part of it was only wet with salt water, and could have been carried to Montevideo in a damaged condition, but without rotting or bleaching. The original cost of the cargo was $8,518 73. In its damaged condition it was worth in New York, $4,947 26. The freight on the lumber, payable on performance of the voyage, according to the charter party, was $5,105 29, gold. The charterer offered, in place of the damaged cargo. to supply a new cargo of lumber, to be transported under the charter in lieu of the damaged cargo, but the master refused to give up the damaged cargo without payment of full freight. No offer was made to carry the cargo in any other ship, or to furnish any other ship, but a survey of the bark was had, and an estimate obtained of the probable cost of repairs, and the bark was thereafter repaired.

The value of the bark, in her damaged condition prior to the repairs. was $4,500. The total amount of the bills incurred in repairing the vessel, was $13,314 38; her value, when repaired, as disclosed by a subsequent sale, was $10,000. Without the payment of the bills for the repairs, and which constituted liens upon the vessel, it was impossible for her to proceed upon the voyage provided in the charter, and the master was wholly without funds, the owners having refused to provide any money wherewith to pay for the repairs. The master, therefore, determined to borrow about $17,000 upon bottomry and respondentia. and on the 12th of June actually advertised for a loan of that amount upon the security of the vessel, her freight and cargo. for the voyage in the charter provided. Whereupon the charterer demanded his lumber, and, upon a refusal to surrender it, except on payment of full freight, he brought his action for possession, which is the first of the actions above named, and by means of the process in this court, took the cargo from the possession of the master. Subsequently, the cargo was delivered by the marshal to the charterer, upon a stipulation for value taken in court, to return the same or to pay whatever sum the court should declare the ship

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

entitled to receive by reason of the removal of the cargo under the circumstances.

Thereafter the master also filed his libel against the charterer demanding a decree for the full freight and the average charges, by reason of the premises, which is the second action above mentioned. The two causes have been tried together upon a written statement of facts in which the facts above set forth are contained.

In disposing of the questions of law which have been discussed as arising in these cases, I feel authorized to consider the cases in any aspect presented by the written statement of facts which has been filed, whether such aspect be presented by the pleadings or not. If necessary, the pleadings can be made to conform to the evidence, and they may be so amended.

Upon the facts presented, I am of the opinion that the charterer was justified in demanding his cargo, without payment of any freight, upon two grounds. One ground is, that in view of the damaged condition of the cargo and its depreciation by the fire, to a value less than the freight, it having been unladen and being in the port of shipment, the shipper was entitled to ship in place of it a similar sound cargo, to be transported under the charter party in lieu of the damaged cargo. The ship would sustain no loss by such a change, and by such new shipment the charter party would, in my opinion, have been performed on the part of the charterer. The refusal to accept the substituted cargo which was thus tendered, therefore, entitled the charterer to treat the charter as broken by the ship, and to demand the damaged cargo without payment of freight.

The charterer also became entitled to have his cargo without payment of freight, by reason of what subsequently occurred, after the repairs of the ship were completed. It is to be noticed that no question was raised as to the right of the vessel to repair and to earn the freight stipulated in the charter. That right was conceded by the offer to provide a sound cargo, to be transported in lieu of the damaged cargo. It could not be disputed that the ship had the right to repair and earn the freight, notwithstanding the fact that the cargo had become of less value than the freight. Damage to the cargo, without fault of the ship, by an excepted peril, could not deprive the ship of the right to earn the freight she had agreed for.

The subsequent act of the master which caused the shipper to retake his cargo, was the announcement of the master that he was about to raise about $17,000 upon bottomry and respondentia, and that without thus pledging the cargo, he could not proceed upon the voyage. No specific statement by the master that he could not proceed without thus resorting to the cargo, is shown, but the facts admitted fully warranted that inference, and the subsequent sale of the vessel on legal proceedings instituted by the material men,

which the statement of facts narrates, shows that the inference was correct. The case, therefore, presents the further question, whether this action of the master in respect to the cargo, under the known circumstances of the ship, did not justify the shipper in treating the voyage as broken up by the fault of the ship, and retaking his cargo without payment of any freight. It is not to be disputed that the master of a ship has power, under some circumstances, to raise money upon the security of the cargo. But when the foundation of this authority is examined, it proves decisive against the right of the master to exercise it in a case like this. The sole foundation for any authority of the master to sell a part or hypothecate the whole of a cargo shipped on board his vessel, is the prospect of benefit to the owner of the cargo. Therefore, it has been considered that while under proper circumstances the master might sell a part of his cargo, he could not sell the whole, for the reason that it could be of no possible benefit to the owner of the cargo that the ship proceed empty. What is in all such cases to be sought for as the basis of the master's authority to hypothecate the cargo, is a reasonable expectation of benefit to the owner of the cargo by the completion of the voyage, which is thus accomplished by the use of his property. If this be the limit of the master's authority, then, in the present case, the master was wholly without authority to resort to the cargo, as he proposed, in order to raise money for the purpose of enabling him to complete the voyage, because the completion of the voyage could not possibly be of benefit to the shipper, for his cargo had already become of less value than the freight he would be liable to pay on the termination of the voyage. The proposal of the master to raise money upon the cargo, under the circumstances, was not to raise money for the benefit of the cargo, but, in substance and effect, was to devote the cargo to the payment of the ship's debts, in which the shipper of the cargo had no interest.

The ship was worth $10,000. The freight, when earned, would be $5,105 29, and the announcement of the master was that he intended to raise about $17,000, at marine interest, and to pledge the cargo therefor. Such an intention, if carried into effect, would necessarily have resulted in casting upon the cargo a large part of the expense of the repairs which belonged to the ship alone to pay. The announcement of such an intention was the announcement in the most authoritative way, that the ship was unable to perform the charter, and justified the shipper in treating the voyage as broken up by the fault of the ship, and it entitled him to demand his cargo without payment of freight.

As the liability for the proper share of average expenses is not disputed, and an average bond has been taken. I understand that no action of this court is required in re-

lation thereto, although those charges form part of the demand set forth in the libel of the master. The decree must be that in the first action the libellant be declared entitled to the possession of the lumber, and to a decree against the respondent for costs; and, in the second case, that the libel be dismissed, with costs.